IN THE UNITED STATES DISTRICT COURT
DISTRICT OF NORTH DAKOTA
SOUTHWESTERN DIVISION

| | | |
|---|---|---|
| OBO, Inc., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | Civil No. 1:05cv65 |
| v. | ) | |
| | ) | |
| Continental Resources, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM AND ORDER**

The parties in this case have filed cross-motions for summary judgment. Plaintiff OBO, Inc. ("OBO") asserts that Continental Resources, Inc. ("Continental") has failed to pay OBO its share of the proceeds from the sale of production from the Medicine Pole Hills-Red River Unit in breach of the parties' Unit Operating Agreement. OBO contests the validity of a 1998 amendment to the Unit Operating Agreement, and Continental contends the amendment permits it to assess and collect a non-consent penalty against OBO. Alternatively, Continental contends OBO has waived any invalidity or is equitably estopped from asserting the invalidity of the 1998 amendment.

<u>Summary of Decision</u>

The court finds on the undisputed record that Continental breached Article 6.4 of the Unit Agreement by withholding payment from OBO. Continental has imposed an invalid 300% non-consent penalty against OBO's working interest. The court further finds that OBO has not waived and is not estopped from asserting the invalidity of the amendment. Plaintiff OBO Inc.'s

1

Motion for Summary Judgment (Doc. #33) is **GRANTED**.  Defendant Continental Resource Inc.'s Motion for Summary Judgment (Doc. #35) is **DENIED**.

Factual Background

This action involves the Medicine Pole Hills-Red River Unit (the "Unit"), formed pursuant to statute addressing "compulsory unitization" for the purpose of facilitating enhanced recovery of oil and gas from the Medicine Pole Hills field in Bowman County, North Dakota. The State Industrial Commission approved creation of the Unit in 1985 by order adopting the Unit Agreement and the Unit Operating Agreement.  *Industrial Commission Order # 3960, Exhibit A to Affidavit of Lynn Helms (Doc. #41)*.  The Unit Agreement and the Unit Operating Agreement govern the unitization and operation of the Unit and, consequently, the rights and obligations of all working interest owners.  *Exhibits C and D to Defendant's Statement of Material Fact (Doc. #37)*.

The working interest owners agreed to share in unit revenues as well as unit expenses based on each working interest owner's proportionate interest in the Unit.  Article 6.4 of the Unit Agreement provides that the unit operator must pay the proceeds of the sale of any unit production to the working interest owners of each affected tract.

Koch Exploration Company served as the initial unit operator.  In 1995, Continental purchased Koch's interest in the Unit and assumed the operations of the Unit.  During the relevant time period Continental owned 64.75% working interest in the Unit.  In 1998, OBO purchased 8.693% working interest in the Unit.

After Continental assumed its duties as unit operator, it encountered delinquencies by working interest owners in making their expense payments, which resulted in Continental

covering 90% of the expenses but receiving only 64.75% of the production revenue. *Affidavit of Tom Luttrell, at ¶ 8, Exhibit B to Defendant's Statement of Material Fact (Doc. #37)*. This led Continental in December 1998 to propose an amendment to the Unit Operating Agreement to provide for a "non-consent" penalty, "to give each working interest owner an alternative not to participate in a proposed operation, thereby not incurring the expense for the same." *Brief of Defendant Continental Resources, Inc. in Support of Motion for Summary Judgment (Doc. #36), at 4*. The amendment provided that any working interest owner who failed to pay its proportionate share of expenses would bear a penalty of 300% of those expenses applied against its share of production. *Exhibit E to Defendant's Statement of Material Fact (Doc. #37)*. According to Continental, "[i]f a party chose not to consent to a proposed operation, he would share in the revenues from the proposed operation after 300% of its share of the expenses were recouped." *Brief of Defendant Continental Resources, Inc. in Support of Motion for Summary Judgment (Doc. #36), at 1*.

Continental asserts the amendment process accorded with Article 4 of the Unit Operating Agreement, which provides in part:

> 4.3 <u>Voting Procedure</u>. Working Interest Owners shall determine all matters coming before them as follows:
>
> 4.3.1 Each Working Interest Owner shall have a voting interest equal to its Unit Participation.
>
> 4.3.2 <u>Vote Required</u>. Unless otherwise provided herein or in the Unit Agreement, Working Interest Owners shall determine all matters by the affirmative vote of two or more Working Interest Owners have a combined voting interest of at least sixty-five percent (65%); however, should any one Working interest Owner own thirty percent (30%) or more of the voting interest, its negative vote or failure to vote shall not defeat any proposal unless supported by the vote of at least one or more other Working Interest Owners having

          at least four percent (4%) of the voting interest.

    4.3.3   <u>Vote at Meeting by Nonattending Working Interest Owner</u>.  Any Working Interest Owner who is not represented at a meeting may vote on any agenda item by letter or telegram addressed o the representative of the Unit Operator if its vote is received prior to the vote at the meeting.

    4.3.4   <u>Poll Votes</u>.  Working Interest Owners may vote by letter or telegram on any matter submitted in writing to all Working Interest Owners.  If a meeting is not requested, as provided in Article 4.2, within fourteen (14) days after a written proposal is received by the Working Interest Owners, the vote taken by letter or telegram shall control.  Failure to reply within fourteen (14) days to a matter so submitted in writing shall be deemed a vote in agreement with the submitting party.  Unit Operator shall give prompt notice of the results of such voting to each Working Interest Owner.

*Exhibit D to Defendant's Statement of Material Fact (Doc. #37).*

Continental did not submit the proposed amendment for a vote by all working interest owners.  Instead, it secured the approval of Mosbacher Energy Company on December 21, 1998, and Pruett Oil Company on December 30, 1998.  *Exhibits F and G to Defendant's Statement of Material Fact (Doc. #37).*  Mosbacher and Pruett each owned .412450% of the Unit participation.  Continental contends that once Mosbacher voted in favor of the amendment, the amendment passed in accordance with the terms of the Unit Operating Agreement with a combined voting interest of two or more owners of 65.09059%.  On December 23, 1998, Continental gave notice to all the working interest owners that the amendment had been adopted. *Exhibit E to Defendant's Statement of Material Fact (Doc. #37).*

A few months after this notice, Continental sent to the working interest owners a proposal for a drilling operation, seeking their approval.  OBO submitted a "negative vote" on the proposal.  *Sept. 23, 1999 Letter from Kathy Rangel of OBO to Continental,  Exhibit A to*

*Defendant's Statement of Material Fact (Doc. 37).* Continental treated this negative vote as an election by OBO not to participate in the operation, thereby subjecting itself to the 300% non-consent penalty. Another working interest owner, Howell Petroleum, apparently resisted the 300% penalty and sent to all working interest owners in 2000 a proposed amendment changing the penalty to 200%. OBO voted in favor of this amendment. Apparently the amendment did not carry, but OBO assumed it had. In 2001 and again in 2002 OBO requested an accounting from Continental and also sought verification "that the penalty was reduced to 200%." *Oct. 10, 2001 E-mail from Kathy Rangel of OBO to Sue Hamm, Exhibit D, and Jan. 4, 2002 Facsimile from Kathy Rangel of OBO to Jim Cannon of Continental, Exhibit F, Appendix to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. #52).*

Howell and Continental ended up in litigation. OBO supported Howell by submitting an affidavit contesting the validity of Continental's 300% penalty amendment. *Exhibit G to Affidavit of Lowell Dunn, II (Doc. #63).* Howell and Continental settled the litigation in 2003 by jointly proposing an amendment to drop the non-consent penalty provision and revert to language identical to the original provisions of the Unit Operating Agreement, other than omission of Article 11's direct reference to a working interest owner's election to be carried or financed. *Exhibit H, Appendix to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. #52).* When Continental submitted this proposed amendment to the working interest owners for approval, OBO, along with a sufficient majority of other working interest owners, voted in favor of its adoption. At the same time that OBO submitted its vote, it sent a letter to Continental stating the non-consent penalty never had been part of the Unit Operating Agreement and demanding credit for any penalty Continental had applied. *August 15, 2003*

*Letter from Lowell S. Dunn, II of OBO to Continental, Exhibit H, Appendix to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. #52)*.

Continental has withheld $604,691.75 from OBO as a non-consent penalty. OBO does not dispute Continental's accounting. Rather, OBO contends Continental's attempt to amend the unit operating agreement in 1998 by obtaining only the consent of Mosbacher and Pruett "complied with neither the governing statutes of North Dakota nor the provisions of the Unit Operating Agreement and was of no force and effect." *Plaintiff's Memorandum in Support of Motion for Summary Judgment (Doc. #39), at 4*. Thus, OBO asserts Continental's failure to pay OBO the proceeds received from the sale of OBO's share of unitized substances constitutes a breach of Article 6.4 of the Unit Agreement. *Id.*

### Summary Judgment Standard

Summary judgment is appropriate if there is not a genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. Pro. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986)*. Rule 56 of the Federal Rules of Civil Procedure "mandates the entry of summary judgment . . . against a party failing to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex, 477 U.S. at 322*. If the moving party has supported its motion for summary judgment, the nonmoving party bears the affirmative burden to go beyond the pleadings and show a genuine triable issue of fact. *Commercial Union Ins. Co. v. Schmidt, 967 F.2d 270, 271 (8th Cir. 1992)*. However, the court considering a motion for summary judgment must view the evidence in the light most favorable to the nonmoving party, who enjoys "the benefit of all reasonable inferences to be drawn from the facts." *Vacca v. Viacom Broadcasting of Missouri, Inc. et al., 875 F.2d 1337, 1339 (8th Cir.*

*1989)(citation omitted).*

Summary judgment is improper if the court finds a genuine issue of material fact; however, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment . . .." *Commercial Union Insurance Co. v. Schmidt, 967 F.2d 270, 271-72 (8th Cir. 1992)(citation omitted).* The issue is whether "the evidence is sufficient to allow a reasonable jury to return a verdict for the nonmoving party." *Landon v. Northwest Airlines, Inc., 72 F.3d 620, 624 (8th Cir. 1995).*

## Discussion

I.  Breach of Contract

    A.  Industrial Commission Approval Required for Amendment.

The Medicine Pole Hills-Red River Unit is a creature of statute subject to Industrial Commission approval and oversight. North Dakota Century Code Section 38-08-09.3 outlines the findings the Industrial Commission must make to create the Unit: "[A]ll upon such terms and conditions, as may be shown by the evidence to be fair, reasonable, equitable, and which are necessary or proper to protect, safeguard, and adjust the respective rights and obligations of the several persons affected …." In addition to outlining the requirements for forming a compulsory unit, the statutes specifically address the revision of a unit or an amendment of a plan of unitization. North Dakota Century Code Section 38-08-09.9 provides:

> The unit area of a unit may be enlarged at any time by the commission, subject to the limitations hereinbefore provided to include adjoining portions of the same common source of supply, including the unit area of another unit, and a new unit created for the unitized management, operation, and further development of such enlarged unit area, <u>or the plan of unitization may be otherwise amended, all in the same manner, upon the same conditions and subject to the same limitations as provided with respect to the creation of a unit in the first instance</u>, except, that where an amendment to a plan of unitization relates only to the rights and

obligations as between lessees, or the amendment to a plan of unitization or the enlargement of a unit area is found by the commission to be reasonably necessary in order to effectively carry on the joint effort, to prevent waste, and to protect correlative rights, and that such will result in the general advantage of the owners of the oil and gas rights within the unit area and the proposed enlarged unit area, and the persons and owners in the proposed added unit area have ratified or approved the plan of unitization as required by section 38-08-09.5, then such amendment to a plan of unitization or the enlargement of a unit area need not be ratified or approved by royalty owners of record in the existing unit area provided that written notice thereof is mailed to such royalty owners by the operator of a unit not more than forty days nor less than thirty days prior to the commission hearing. The notice must describe the plan for the unit amendment or enlargement together with the participation factor to be given each tract in the unit area and in the proposed area and must contain the time and place of the commission hearing. An affidavit of mailing verifying such notice must be filed with the commission. Said notice must further provide that in the event ten percent of the royalty interests or working interests in the existing unit area file with the commission at least ten days prior to the commission proceeding an objection to the plan of enlargement, the commission shall require that the unit amendment or enlargement be approved by sixty percent of all royalty interests and working interests in the existing and proposed areas.

*N.D. Cent. Code. § 38-08-09.9 (2003) (emphasis added)*.  The requirements for initial unitization include an application to the Industrial Commission, notice to all owners, an Industrial Commission hearing and approval, and ratification by working interest owners.  *Id.*  The same requirements apply to amendment of a unit plan.  *Id.*

The order of the Industrial Commission authorizing the Unit specifically defers to the statute:

(19) (4)  That the plan of unitization consisting of the Unit Agreement and the Unit Operating Agreement, is hereby incorporated in this order by reference, and shall apply to the same extent and with the same force and effect as if actually set forth herein; that the said plan of unitization of and for said Medicine Pole Hills-Red River Unit, all to the same extent and with the same force and effect as if set forth herein in its entirety; that if said plan of unitization does not in all respects conform to and comply with the provisions and requirements of Section 38-08-09.1 through 38-08-09.13 N.D.C.C., the statute shall prevail.  (emphasis added).

*Industrial Commission Order No. 3960, Exhibit A to Affidavit of Lynn Helms (Doc. #41)*.  Thus,

the statute preempts any conflicting terms of the Unit Agreement or Unit Operating Agreement.

Continental contends the Industrial Commission's approval of the voting procedure in the original Unit Operating Agreement in 1985 negates any requirement for Industrial Commission approval of amendments.  The court finds otherwise.  The statute controls the unitization process, including amendment to a unitization plan.  The Industrial Commission's approval of the Unit Agreement and Unit Operating Agreement did not eliminate the requirement for its approval of future amendments. Because Continental sought no such approval for the 1998 amendment,  the court finds the1998 amendment is not valid.

B.      Non-consent Penalties Not Authorized by Statute Before 2003

OBO argues the non-consent penalty was unauthorized by law prior to 2003 and would not have been approved by the Industrial Commission had Continental made proper application.

The order approving the formation of the Unit specifically addressed the issue presented by the amendment:

> (10)  That the plan of unitization filed with the application contains fair, reasonable, and equitable provisions for:
>
> . . . .
>
> (c)     The manner in which the unit and the further development and operations of the unit area shall or may be financed and the basis, terms and conditions upon which cost and expense thereof shall be apportioned among and assessed against the tracts and interest made chargeable therewith, including a detailed accounting procedure governing all charges and credits incident to such operation, and makes reasonable provision for carrying or otherwise financing lessees who are unable to promptly meet their financial obligations in connection with the unit.

*Industrial Commission Order No. 3960, Exhibit A to Affidavit of Lynn Helms (Doc. #41).*  The order parroted the statutory requirements pertaining to the financing of the Unit operations.

In 2003, the statute was amended to include a provision for a risk penalty.  This section

provides, in relevant part:

> Upon and subject to such terms and conditions as to time and legal rate of interest as may be fair to all concerned, reasonable provision must be made in the plan of unitization for carrying or otherwise financing owners who are unable to promptly meet their financial obligations in connection with the unit and, in addition to the unit expense assessed against each tract and chargeable to each owner, the recovery of a risk penalty from each owner electing not to participate in the unit expense. <u>The recovery of the risk penalty is as follows:</u>
>
> a. If the nonparticipating owner's interest in the unit is derived from a lease or other contract for development, the risk penalty is <u>two hundred percent</u> of the nonparticipating owner's share of the unit expense and may be recovered out of, and only out of, production from the unit, exclusive of any royalty or overriding royalty.
>
> b. If the nonparticipating owner's interest in the unit is not subject to a lease or other contract for development, the penalty is fifty percent of the nonparticipating owner's share of the unit expense and may be recovered out of production from the unit exclusive of any royalty provided for in section 38-08-09.13.
>
> c. The owner paying for the nonparticipating owner's share of the unit expense may recover from the nonparticipating owner a risk penalty for the risk involved in the unit expense only if the paying owner has made an unsuccessful, good-faith attempt to have the unleased nonparticipating owner execute a lease or to have the leased nonparticipating owner join in and participate in the risk of the unit expense. Before a risk penalty may be imposed, the paying owner must notify the nonparticipating owner with proof of service that the paying owner intends to impose a risk penalty and that the nonparticipating owner may object to the risk penalty by either responding in opposition to the petition for a risk penalty or if no such petition has been filed, by filing an application or request for hearing with the industrial commission.

*N.D. Cent. Code § 38-08-09.4(3) (2003) (emphasis added).* Prior to 2003 there was no statutory provision for the recovery of a risk penalty.

Interestingly, in an application for formation of an adjacent unit in 1999, Continental requested the inclusion of a non-consent penalty. The Industrial Commission, while noting "the existence of a question as to its authority to approve a nonconsent penalty in the absence of legislative authorization," found the penalty sought by

Continental "not only unnecessary but excessive." *Industrial Commission Order 8504, Exhibit D to Affidavit of Lynn Helms (Doc. #41)*. Subsequent to legislative authorization of the non-consent penalty in 2003, Continental sought approval of an amendment relating to another unit in Bowman County. The Industrial Commission approved prospective application of the proposed 200% risk penalty, but found that applying the penalty to events and expenses incurred prior to the effective date of the 2003 statutory amendment would constitute "an unlawful, retroactive application" of the statute. *Industrial Commission Order 9727, Exhibit E to Affidavit of Lynn Helms (Doc. #41)*. Applying these principles to this case, the court finds the terms of the 1998 amendment to the Medicine Pole Hills-Red River Unit Operating Agreement were not authorized by law at the time the amendment was proposed; nor has Continental obtained Industrial Commission approval since the statutory change. Therefore, the court finds the amendment is invalid under applicable law.

    C.    <u>Alternatively, the Amendment Failed to Comply With the Terms of the Unit Operating Agreement.</u>

Continental states that Article 4 of the Unit Operating Agreement unambiguously sets forth the "vote necessary to amend the Agreement and the procedure for doing so," and that "once at least two owners having a combined voting interest of 65% have agreed on the matter" an amendment passes. *Brief of Defendant Continental Resources, Inc. in Support of Motion for Summary Judgment (Doc. #36), at 8, 9*. Continental maintains that it did not have to poll OBO, holder of only an 8.693% working interest, in order for the 1998 amendment to pass. Rather, Continental contends OBO was entitled only to written notification of the amendment. *Id. at 8*.

The court finds that Continental failed to comply with the terms of the Unit Operating Agreement. Specifically, Continental's furtive method of obtaining an affirmative vote of 65% of the voting interest before notifying the other owners is inconsistent with the provision that the matter must be "submitted in writing to all Working Interest Owners."  *Article 4.3.5 of Unit Operating Agreement, Exhibit D to Defendant's Statement of Material Fact (Doc. #37)*.   Continental's argument that Article 4.3.5 "does not require that the proposed matter be submitted to all working interest owners at the same time,"  *Brief of Defendant Continental Resources, Inc. in Support of Motion for Summary Judgment (Doc. #36), at 9*, fails to recognize the two-step process outlined by the agreement: (1) submission of the matter to the working interest owners, and (2) securing an affirmative vote of 65% of the voting interest.  Continental did not seek votes from all working interest owners; rather, it secured the friendly vote it needed for 65% approval and then provided notice to the other working interest owners only as a fait accompli.  In addition, the method utilized by Continental ignored the working interest owners' right to request a meeting on the proposed action.  *Article 4.2 and 4.3.4, Unit Operating Agreement, Exhibit D to Defendant's Statement of Material Fact (Doc. #37)*.

For the foregoing reasons, the court finds the procedure used for adoption of the 1998 amendment failed to comply with Article 4 of the Unit Operating Agreement; therefore, the amendment is contractually invalid.

### D. Continental's Withholding of Monies Breached the Contract.

Continental has used the invalid penalty provision to withhold from OBO substantial sums of production revenues attributable to OBO's working interest.  The

failure to pay OBO its share of proceeds from the sale of unitized production breached Article 6.4 of the Unit Agreement. OBO's motion for summary judgment on its breach of contract claim is **GRANTED.**

II.   OBO Did Not Waive the Invalidity, Nor is OBO Equitably Estopped from Asserting the Invalidity of the 1998 Amendment.

Continental asserts OBO waived its right to object or is equitably estopped from asserting the invalidity of the 1998 amendment for a number of reasons. In particular, Continental claims that after adoption of the 1998 amendment OBO chose non-consent status by casting a "negative" vote on a proposed operation in September 1999. OBO disputes any non-consent "election," contending that Continental "unilaterally treated this negative vote as a non-consent election." *Plaintiff's Response to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. #62), at 5, fn.2*. OBO apparently converted any working interest owner who voted against a proposed operation into a non-participant subject to the non-consent penalty. The court finds the undisputed facts show that OBO never affirmatively elected non-consent status and did not choose to subject itself to the penalty; it only registered opposition to particular drilling operations proposed by Continental. The court recognizes Continental's frustration with non-paying owners, but Continental assumed operational responsibilities fully aware of the financing and carrying terms of the Unit Operating Agreement.

Further, Continental contends OBO acknowledged the amendment through its involvement in the lawsuit between Continental and Howell Petroleum Corporation and by asking Continental to verify that the non-consent penalty was later reduced from 300% to 200% following the attempted Howell amendment. *Defendant Continental Resources,*

*Inc.'s Brief in Opposition to Plaintiff OBO Inc.'s Motion for Summary Judgment (Doc. #51), at 10-11.* OBO's only involvement in the Howell litigation was submission of an affidavit in support of Howell, which stated, "Since Continental's amendments were illegally adopted, it had no legal right to charge a 300 % penalty against OBO's share of Unit Expenses . . . ." *Exhibit G to Affidavit of Lowell S. Dunn, II (Doc. #63)*. Later, when Continental and Howell settled their lawsuit by jointly submitting an amendment to other working interest owners in June 2003 to eliminate the non-consent penalty provision, OBO approved the elimination and sent a letter to Continental stating the non-consent penalty "is not nor will ever be part of the Unit Operating Agreement." *Exhibit H to Appendix to Defendant's Response to Plaintiff's Motion for Summary Judgment (Doc. #52)*. The undisputed record does not support Continental's assertion that OBO acknowledged validity of the amendment. In addition to the above communications, OBO repeatedly requested an accounting in an attempt to ascertain whether Continental had in fact charged OBO a non-consent penalty. *Letter from Phil Bewer, Exhibit A, and Facsimile from Kathy Rangel, Exhibit E to Affidavit of Lowell S. Dunn, II (Doc. #63)*.

Additionally, Continental raises issues concerning waiver of Industrial Commission approval. First, Continental argues that OBO's failure, until it commenced this lawsuit, to claim the necessity of Industrial Commission approval for the non-consent penalty amendment amounts to a waiver of the alleged defect. Also, Continental argues that OBO's favorable vote on other amendments to the Unit Operating Agreement without Industrial Commission approval amounts to waiver. *Defendant Continental Resources, Inc.'s Brief in Opposition to Plaintiff OBO Inc.'s Motion for Summary Judgment (Doc.*

*#51), at 10.* The favorable votes upon which Continental relies involve OBO's assent to the proposed Howell amendment to reduce the non-consent penalty to 200% and to the 2003 amendment jointly proposed by Howell and Continental to eliminate the non-consent penalty entirely.

OBO responds that it did not have "actual knowledge" that amendments to the Unit Operating Agreement require Industrial Commission approval, whereas Continental knew from experience such approval was necessary. Accordingly, OBO contends it did not waive the requirement. *Plaintiff's Response to Defendant's Brief in Opposition to Plaintiff's Motion for Summary Judgment (Doc. #62), at 6-7.*

The court rejects each of Continental's assertions regarding waiver of Industrial Commission approval. The court has already found that the statute controls the unitization process, including amendment to a unitization plan, and that the Industrial Commission's approval of the Unit Agreement and Unit Operating Agreement did not eliminate the requirement for its approval of future amendments. The court also finds OBO's favorable vote on proposals to reduce and then eliminate the non-consent penalty did not waive its right to object to the validity of that penalty provision.

Finally, Continental asserts that OBO is equitably estopped from claiming invalidity of the amendment because Continental detrimentally relied on OBO's silence and acquiescence. *Defendant Continental Resources, Inc.'s Brief in Opposition to Plaintiff OBO Inc.'s Motion for Summary Judgment (Doc. #51), at 15.* Continental delineates the same facts to establish estoppel as outlined to support its claim of waiver. The court finds no merit in Continental's estoppel argument. The undisputed record

demonstrates OBO repeatedly voiced its objection to the imposition of the non-consent penalty and to the manner in which the Unit Operating Agreement was amended. OBO questioned whether the terms of the amendment had been implemented and requested accountings on a number of occasions. Therefore, the court finds that OBO has neither waived objection to the validity of the amendment, nor is it estopped from asserting the amendment is invalid.

## Conclusion

The court finds that Continental breached the parties' contract by withholding payments from OBO through imposition of an invalid 300% non-consent penalty. The court further finds that OBO has not waived and is not estopped from asserting the invalidity of the non-consent penalty.[1] Therefore, Plaintiff OBO Inc.'s Motion for Summary Judgment (Doc. # 33) is **GRANTED**. Defendant Continental Resource Inc.'s Motion for Summary Judgment (Doc. #35) is **DENIED**.

The parties are directed to propose an order for judgment and judgment awarding OBO the net amount improperly withheld from OBO, including prejudgment interest, in accordance with this ruling. Judgment will be entered after determination of the amount.

Dated this 12th day of April, 2007.

                                */s/ Karen K. Klein*
                                Karen K. Klein
                                United States Magistrate Judge

---

[1] OBO has conceded that an accounting is not necessary to calculate the amount withheld by Continental, save for a prejudgment interest determination. Additionally, OBO indicates it is not pursuing its conversion claim in the event summary judgment is granted in its favor on its breach of contract claim.